NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| Jerome REID,<br><br>           Plaintiff,<br>    v.<br><br>EXELON CORPORATION and<br>PSEG SERVICES CORPORATION,<br><br>           Defendants. | Civil No. 17-4043 (RBK/AMD)<br><br>**OPINION** |

**KUGLER**, United States District Judge:

This matter comes before the Court on PSEG Services Corporation's ("PSEG") Motion to Dismiss (ECF No. 8) and Exelon Corporation's ("Exelon") Motion to Dismiss (ECF No. 9), since rendered moot by Plaintiff's Amended Complaint. (ECF No. 18.) Also before the Court is Exelon's most recent Motion to Dismiss. (ECF No. 24.) Because Plaintiff's amended complaint has superseded the prior motions to dismiss, those motions are **DISMISSED AS MOOT**. The Court also finds that Plaintiff's amended complaint is insufficient, and Exelon's Motion to Dismiss (ECF No. 24) is **GRANTED**. Plaintiff's amended complaint is **DISMISSED WITHOUT PREJUDICE**.

### I. BACKGROUND

Plaintiff Jerome Reid's complaint canvasses much of his employment history and life experiences from December 5, 1985 to the present. We only address those portions that are relevant to Exelon's motion to dismiss.

1

Plaintiff is an African American man who is 62 years old. He has an associate degree in Mechanical Technology from Onondaga Community College, a Bachelor of Science in Electro-Mechanical Technology from the State University of New York's Empire College, and a master's degree in Engineering Management from Florida Institute of Technology. (Am. Compl. at ¶ 1.) Plaintiff has a long history of working in nuclear power plants. He worked at the nuclear power facility at Nine Mile Point in Scriba, New York, beginning on December 5, 1985, for two different employers. (*Id.* at ¶¶ 2-7, 13, 15, 20.) Plaintiff's first employer was Niagara Mohawk Power Corporation ("Niagara"). (*Id.* at ¶¶ 2-7.) In December 2000, Niagara sold the facility to another company, Constellation Energy ("Constellation"), which then became Plaintiff's employer. (*Id.* at ¶ 8.) Plaintiff's employment at Nine Mile Point appears to have been terminated on March 18, 2002. (*Id.* at ¶ 7.)

In April 2011, nine years after Plaintiff's employment had ended, Exelon acquired Constellation, along with the Nine Mile Point facility. (*Id.* at ¶ 13.) Four years after that, Plaintiff applied for several "Nuclear Equipment Operator" positions with Exelon but did not get a response back. (*Id.*) Plaintiff also sent letters to Exelon executives asking about some of the positions he had applied to, but he did not get a response. (*Id.*) Plaintiff also notes that several recruiters have contacted him about jobs but that he was nonetheless refused an interview. (*Id.* at ¶ 10.)

Plaintiff was hired as a temporary nuclear worker at the Salem Nuclear Power Plant in Salem County, New Jersey in 2015 and 2016, which is partially owned by Exelon but operated by PSEG. (*Id.* at ¶ 16.) He received excellent job performance appraisals. (*Id.*) Plaintiff also applied to four other Nuclear Equipment Operator positions, but he did not receive any responses and was told another candidate had been selected for some of the positions. (*Id.* at ¶ 17.) Plaintiff's

complaint also refers to another power plant named Hope Creek, but it is unclear whether Exelon has a relationship with this entity.

Plaintiff has visited the Salem plant and noted that he did not see any African American nuclear operators on the premises. (*Id.* at ¶ 20.) He also knows individuals who were hired at the Salem plant. (*Id.*) In 1989, Plaintiff reached a settlement agreement with Niagara under which he was given the option to return to his original position as a nuclear auxiliary operator. (*Id.* at ¶ 7.) Plaintiff alleges this settlement was breached several times, beginning in 1989. (*Id.*) Plaintiff has also filed complaints with the Equal Employment Opportunity Commission ("EEOC") for discriminatory conduct in the past, which he argues is why Exelon would not hire him. (*Id.* at ¶ 20.)

On June 21, 2016, Plaintiff filed a charge with the EEOC against Exelon, alleging unlawful race and age discrimination and retaliation. (Am. Compl. Ex. 2.) The EEOC was unable to conclude that the information it obtained in its investigation established a violation of federal law, but Plaintiff was issued a Right to Sue letter on April 4, 2017. (*Id.*)

Plaintiff alleges that Defendants' unresponsiveness is attributable to his race and age and that Exelon prefers younger, Caucasian candidates. (Am. Compl. at ¶ 14.) His amended complaint brings claims of race and age discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*; 42 U.S.C. §§ 1981 and 1981A; the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-634; and a common-law claim of negligent infliction of emotional distress.

**II.     THE 12(b)(6) STANDARD**

When considering a motion to dismiss a complaint for failure to state a claim, Fed. R. Civ. P. 12(b)(6), the Court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the non-moving party. A motion to dismiss may be granted

only if the plaintiff has failed to set forth fair notice of what the claim is and the grounds upon which it rests that make such a claim plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Although Rule 8 does not require "detailed factual allegations," it requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

In reviewing the sufficiency of a complaint, the Court must "tak[e] note of the elements [the] plaintiff must plead to state a claim. Second, it should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, [w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (alterations in original) (internal citations and quotation marks omitted).

Under the "Third-Circuit Rule," a statute of limitations defense may be asserted in a motion to dismiss if "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." *Brown v. Montgomery Cty.*, 470 F. App'x 87, 90 (3d Cir. 2012) (quoting *Hanna v. U.S. Veterans' Admin. Hosp.*, 514 F.2d 1092, 1094 (3d Cir. 1975)).

Finally, the Court notes that pro se complaints must be construed liberally. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

### III. DISCUSSION

#### A. The Past Motions to Dismiss Are Moot

Plaintiff has filed an amended complaint, which "supersedes the original and renders it of no legal effect, unless the amended complaint specifically refers to or adopts the earlier pleading,"

4

*W. Run Student Hous. Assocs., LLC v. Huntington Nat. Bank*, 712 F.3d 165, 171 (3d Cir. 2013) (internal marks omitted). Defendants' prior motions (ECF Nos. 8-9) are therefore **DISMISSED AS MOOT**.

### B. Plaintiff's Pro Se Complaint Substantially Complies with Rule 8's Requirement that a Pleading Be "Short and Plain"

Exelon argues that Plaintiff's complaint fails to provide a "short and plain statement of the claim showing that the pleader is entitled to relief," as it must under Fed. R. Civ. P. 8(a)(2). Although we agree that at times Plaintiff's amended complaint has blended PSEG and Exelon into an indistinguishable mass, we find that it nonetheless puts Exelon on notice as to the claims against it. Importantly, Plaintiff proceeds without counsel, and Courts are required to liberally construe pleadings drafted by pro se parties. *Erickson*, 551 U.S. at 94. Such pleadings are "held to less stringent standards than formal pleadings drafted by lawyers." *Id.* (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). While Defendants are correct that group allegations that do not differentiate among defendants fail to give "fair notice," the cases they cite for this proposition involve scattershot complaints suing many defendants. *See, e.g.*, *Pietrangelo v. NUI Corp.*, 2005 WL 1703200, at *10 (D.N.J. July 20, 2005). This case has two defendants; differentiation may be burdensome, but it does not prevent a defendant from receiving fair notice. Although Plaintiff's amended complaint is "unnecessarily long and contain[s] extraneous material," *Tucker v. (HP) Hewlett Packard, Inc.*, 689 Fed. App'x 133, 135 (3d Cir. 2017), it is still a "short and plain" statement that suffices to put Exelon on notice of the claims against it.

### C. Plaintiff's Complaint Fails to State a Claim

Plaintiff's amended complaint brings claims of race and age discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*; 42 U.S.C. § 1981; and

the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-634. Plaintiff also brings a common-law claim of negligent infliction of emotional distress.

*1. Many of Plaintiff's Alleged Injuries Are Time-Barred*

Under either Title VII or the ADEA, a plaintiff must exhaust administrative remedies before bringing a claim for judicial relief. *Hightower v. Roman, Inc.*, 190 F. Supp. 2d 740, 747 (D.N.J. 2002) (Title VII); *Arrington v. United Parcel Serv.*, 2005 WL 2475706, at *2 (D.N.J. Oct. 5, 2005) (ADEA). Because a plaintiff must file a complaint with the EEOC within 300 days of the occurrence of an unlawful employment practice, all events that occurred more than 300 days prior to an EEOC filing are time-barred. *See* 29 U.S.C. § 626(d)(1)(B); 42 U.S.C. § 2000e-5(e)(1).

In addition, section 1981 claims are subject to a four-year of statute of limitations, though not a comparable administrative exhaustion requirement. *Anderson v. Boeing Co.*, 694 F. App'x 84, 86 (3d Cir. 2017). And in New Jersey, claims of negligent infliction of emotional distress are subject to a two-year statute of limitations. *See Fraser v. Bovino*, 317 N.J. Super. 23, 34 (App. Div. 1998) ("The claims asserted for negligence and infliction of emotional distress are governed by the two-year statute of limitations") (citing N.J. Stat. Ann. § 2A:14-2).

A plethora of allegations in Plaintiff's complaint concern events that are now years, often decades, past. And it is difficult to determine what specifically gave rise to Plaintiff's claims because the amended complaint covers a period in which Plaintiff submitted many job applications that were never responded to. The amended complaint often speaks in general terms and does not articulate which specific actions by Defendants gave rise to the injuries he now alleges. Nonetheless, to the extent Plaintiff seeks recovery for injuries that occurred many years ago—such as the thirteen applications submitted to Constellation in 2007-2008 that were never responded

to—recovery is barred by the EEOC's exhaustion requirement and the applicable statute of limitations.

As to Exelon specifically, Plaintiff alleges that he submitted applications to four positions at the company, the earliest of which was submitted on August 14, 2015. Plaintiff filed his EEOC charge against Exelon on June 21, 2016. Thus, redress for Plaintiff's Title VII and ADEA claims is limited to events which occurred on or after August 26, 2015. However, the complaint does not make clear when Plaintiff discovered this allegedly discriminatory failure to hire, and the Court declines to rule on this question at this time.

    *2. Plaintiff Fails to State a Claim Against Exelon for Applications Submitted to Other Employers*

Under either Title VII, the ADEA, or section 1981, Plaintiff must plead adverse employment actions between him and Exelon unless he can establish a "joint employer" relationship. *See In re Enter. Rent-A-Car Wage & Hour Employment Practices Litig.*, 683 F.3d 462, 469 (3d Cir. 2012). Exelon cannot be subject to liability for actions taken by the other companies referenced in the complaint—namely, Niagara, Constellation, and PSEG—unless Plaintiff has sufficiently pleaded facts demonstrating that Exelon was a prospective "joint employer" of Plaintiff. *See, e.g.*, *Sandoval v. City of Boulder, Colo.*, 388 F.3d 1312, 1323 (10th Cir. 2004) (applying "joint employer" doctrine to failure to hire claim). In determining whether Plaintiff has sufficiently pleaded that Exelon is a "joint employer," the Court must evaluate whether Exelon had (1) the authority to hire and fire employees; (2) the authority to promulgate work rules and assignments, and set conditions of employment, including compensation, benefits, and hours; (3) day-to-day supervision, including employee discipline; and (4) control of employee records, including payroll, insurance, taxes, and the like. *In re Enterprise Rent-A-Car*, 683 F.3d at

7

469. These factors are not exhaustive, and the Court must make a holistic analysis. *Id.* We note, too, that this doctrine applies to subsidiaries in some circumstances. *See In re Enterprise Rent-A-Car Wage & Hour Employment Practices Litig.*, 735 F. Supp. 2d 277, 338 (W.D. Pa. 2010) (citing *Lusk v. Foxmeyer Health Corp.*, 129 F.3d 773, 778 (5th Cir. 1997) ("The doctrine of limited liability creates a strong presumption that a parent corporation is not the employer of its subsidiary's employees")).

Plaintiff has failed to state a claim against Exelon for his allegations concerning the acts of Niagara, Constellation, and PSEG. There is no indication in the complaint that Exelon had even an inkling of what was going on in the other companies, let alone that Exelon was a "joint employer" for the purposes of deciding whether to hire Plaintiff. For example, Plaintiff has stated he worked as a "temporary nuclear worker" at the PSEG-operated Salem Nuclear Power Plant in the spring of 2016. Although that is relevant evidence as to Plaintiff's qualifications, it is not relevant as to Exelon's status as a joint employer. Just because Exelon owns part of the Salem plant does not confer upon it joint employer status. *Cf. Paz v. Piedra*, 2012 WL 12518495, at *7 (S.D.N.Y. Jan. 12, 2012) ("The mere fact that each Corporate Defendant is owned in whole or major part by the same persons simply does not permit this Court to disregard their distinct legal statuses."). Because Plaintiff has not pleaded anything that could establish that Exelon is a "joint employer," to the extent the amended complaint brings claims against Exelon for the acts of other entities, it is dismissed without prejudice.

### 3. *Plaintiff Fails to State a Claim Against Exelon for a Prima Facie Case of Discrimination*

We turn to Plaintiff's allegations of discrimination by Exelon itself. On four instances Plaintiff applied to a job at Exelon and was not hired. He has pointed to Exelon's hiring of

individuals who are not African American and who are younger than Plaintiff. He also states that on a visit to a PSEG—not an Exelon—facility, he saw no African American men. (Compl. at ¶ 20.) Beyond this, Plaintiff has presented a series of emails which told him he was not being considered for the jobs to which he had applied.

Title VII, section 1981, and the ADEA are substantially identical for discrimination claims. To state a claim of racial discrimination under Title VII, Plaintiff must first establish a prima facie case of discrimination by showing that (1) he is a member of a protected class; (2) he was qualified for the position he sought to attain or retain; (3) he suffered an adverse employment action; and (4) the action occurred under circumstances that could give rise to an inference of intentional discrimination. *See Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). The same applies for 42 U.S.C. § 1981: "[T]he substantive elements of a claim under section 1981 are generally identical to the elements of an employment discrimination claim under Title VII." *Brown v. J. Kaz, Inc.*, 581 F.3d 175, 181-82 (3d Cir. 2009) (citing *Schurr v. Resorts Int'l Hotel, Inc.*, 196 F.3d 486, 499 (3d Cir. 1999)). A prima facie case of age discrimination under the ADEA "requires the same showing save that the fourth element instead asks more specifically whether the plaintiff was 'ultimately replaced, or the position was filled by, a younger person.'" *Daniels v. Sch. Dist. of Philadelphia*, 982 F. Supp. 2d 462, 479 (E.D. Pa. 2013) (quoting *Connors v. Chrysler Fin. Corp.*, 160 F.3d 971, 974 (3d Cir. 1998)).

On a motion to dismiss, Plaintiff cannot plead a discrimination claim by merely reciting the elements under each count of his amended complaint. Mere conclusory allegations, such as that Exelon did not hire him because of his race and age, are insufficient. *See, e.g.*, *Foy v. Wakefern Food Corp.*, 2010 WL 147925, at *4 (D.N.J. Jan. 7, 2010) ("A mere allegation that an adverse

9

employment action was motivated by age, without more, is exactly the type of broad conclusory allegation which the Supreme Court has found insufficient."); *Hicks v. Tech Indus.*, 512 F. Supp. 2d 338, 348 (W.D. Pa. 2007) ("Simply because Plaintiff says he was discriminated against . . . does not make it so."). Plaintiff's statements to that effect are insufficient to withstand a 12(b)(6) motion to dismiss.

Plaintiff may proceed with a discrimination claim by identifying an individual that was not subject to the same adverse employment action who was "similarly situated," but who was not within his protected class. *See, e.g.*, *Didier v. Dow Jones Co.*, 2014 WL 4094920, at *14 (D.N.J. Aug. 15, 2014) (quoting *Doe v. C.A.R.S. Prot. Plus, Inc.*, 527 F.3d 358, 366 (3d Cir. 2008) ("Evidence of discrimination is commonly presented in the form of evidence of disparate treatment, 'whereby a plaintiff shows that [he or she] was treated less favorably than similarly situated employees' of a different race.")). As the Third Circuit has explained, "the focus is on the particular criteria or qualifications identified by the employer as the reason for the adverse action . . . the plaintiff must point to evidence from which a factfinder could reasonably infer that the plaintiff satisfied the criterion identified by the employer or that the employer did not actually rely upon the stated criterion." *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 647 (3d Cir. 1998).

However, Plaintiff has not provided evidence that could establish a prima facie case of discrimination. Plaintiff has not identified a similarly situated applicant who was hired by Exelon. *See Mojica v. Advance Auto Parts, Inc.*, 2016 WL 107844, at *5 (E.D. Pa. Jan. 11, 2016) (holding that identifying comparators as "white guys" was not sufficient to establish a prima facie case). To the extent that Plaintiff has identified such individuals, they appear to be employees of PSEG, not Exelon, though their other qualifications are not mentioned. Plaintiff has also not identified a hiring

criterion that was not actually relied on by Exelon. We therefore find that Plaintiff has failed to state claims for an unlawfully discriminatory failure to hire under Title VII, section 1981, and the ADEA. His claims are dismissed without prejudice.

### 4. *Plaintiff Fails to State a Claim of Retaliation*

Plaintiff's retaliation claims against Exelon are similarly insufficient. To plead a case of retaliation under Title VII, section 1981, or the ADEA, a plaintiff must show he (1) engaged in protected activity; (2) the employer took an adverse employment action against him; and (3) there is a causal connection between participation in the protected activity and the adverse employment action. *Moore v. City of Phila.*, 461 F.3d 331, 340-41 (3d Cir. 2006) (retaliation under section Title VII); *Estate of Oliva v. N.J., Dep't of Law & Pub. Safety, Div. of State Police*, 604 F.3d 788, 798 (3d Cir. 2010) (section 1981); *Fries v. Metro. Mgmt. Corp.*, 293 F. Supp. 2d 498, 502 (E.D. Pa. 2003) (ADEA).

We will assume, without deciding, that Plaintiff has engaged in protected activity for which he faced an adverse employment action. Even if that is the case, Plaintiff's complaint that he has been unfairly discriminated against for filing past EEOC charges, in some cases decades ago, does not establish a causal connection. If filing a past EEOC charge was sufficient by itself, Plaintiff would have a claim for retaliation against *any* employer who rejected his application, a far too expansive view of causation. Furthermore, there is no factually-grounded allegation that Exelon was aware of his past conduct or that Plaintiff had reason to believe it was. And to the extent the amended complaint relies on a later EEOC charge, this came after, not before, Exelon's alleged decision not to hire him, again preventing a causal connection. The Court thus finds that Plaintiff has failed to state a claim for retaliation under Title VII, section 1981, or the ADEA.

11

### 5. *Supplemental Negligence Claim Dismissed*

Plaintiff's state-law claim of negligent infliction of emotional distress is within this Court's discretionary supplemental jurisdiction pursuant to 28 U.S.C. § 1367. As the federal-question claims are dismissed, the Court will exercise that discretion and dismiss this claim without prejudice.

### IV. CONCLUSION

For the reasons stated above, Exelon's motion to dismiss is **GRANTED**. An order follows.

Dated: May 30, 2018 /s Robert B. Kugler
ROBERT B. KUGLER
United States District Judge